UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>RATHNAKISHORE GIRI; SR PRIVATE EQUITY, LLC; AND NBD EIDETIC CAPITAL, LLC<br><br>Defendants,<br><br>and<br><br>GIRI SUBRAMANI AND LOKA PAVANI GIRI<br><br>Relief Defendants. | Case. No.:  2:22-cv-03091 |

**COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT**

Plaintiff, U.S. Commodity Futures Trading Commission (the "Commission" or "CFTC"), alleges as follows:

### I. SUMMARY

1. From at least March 2019 through the present ("Relevant Period"), Defendant Rathnakishore Giri ("Giri"), individually, and while acting as an agent and controlling person of SR Private Equity, LLC ("SR Private Equity") and NBD Eidetic Capital, LLC ("NBD Eidetic") (collectively, "Defendants"), engaged in a fraudulent scheme in which Defendants solicited and accepted over $12,000,000 and at least 10 bitcoin from more than 150 individuals or entities ("customers"), to trade digital assets, mainly bitcoin, on behalf of the customers.

2. Beginning in or around March 2019, Defendant Giri solicited customers to invest with him personally by offering to trade digital assets on their behalf. On or about October 2020, Defendant Giri established NBD Eidetic and began to solicit customers to invest in various digital asset investment funds purportedly operated by NBD Eidetic. On or about April 2021, Defendant Giri established SR Private Equity and began to solicit customers to invest in various digital asset investment funds purportedly operated by SR Private Equity.

3. During the Relevant Period, Defendants made numerous false and misleading statements to current and prospective customers, including that: (a) Defendant Giri was an experienced and successful digital asset trader who obtained profitable returns averaging up to 5% to 10% per month; (b) customers were guaranteed profits on their investment with Defendants; (c) customers would not lose any of their initial investment; (d) Defendant Giri was able to limit risk; and (e) customers would be able to withdraw their initial investment and profits at any time.

4. During the Relevant Period, Defendants also omitted material facts in order to solicit prospective customers, such as: (a) Defendants misappropriated and commingled customer funds with Defendant Giri's personal bank and digital asset trading accounts as well as the personal bank and digital asset trading accounts of Giri Subramani and Loka Pavani Giri ("Relief Defendants"); (b) Defendants misappropriated customer funds to pay purported profits to other customers in a manner akin to a Ponzi scheme; (c) Defendants misappropriated customer funds to pay for Defendant Giri's lavish lifestyle, which included yacht rentals, luxury vacations and luxury shopping trips; (d) Defendant Giri only transferred a portion of customer funds to digital asset trading accounts; and (e) Defendants never established any digital asset trading account in the name of any investment fund.

5. Through this conduct and the conduct further described herein, the Defendants have engaged, are engaging, or are about to engage in fraudulent acts and practices in violation of the Commodity Exchange Act ("Act" or "CEA"), 7 U.S.C. §§ 1-26, and Commission Regulations ("Regulations"), 17 C.F.R. parts 1-190 (2021), specifically Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2021).

6. Defendant Giri is a controlling person of NBD Eidetic and SR Private Equity and did not act in good faith or knowingly induced NBD Eidetic and SR Private Equity's violations of the Act and Regulations described herein during the Relevant Period. Therefore, Defendant Giri is liable for NBD Eidetic and SR Private Equity's violations of the Act and Regulations, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b).

7. Defendants NBD Eidetic and SR Private Equity are liable for Defendant Giri's violations pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) and Regulation 1.2, 17 C.F.R. § 1.2 (2021), because he was acting within the scope of his employment or office with these entities.

8. Unless restrained and enjoined by this Court, Defendants are likely to continue engaging in the acts and practices alleged in this Complaint. Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, the CFTC brings this action to enjoin Defendants' unlawful acts and practices and to compel their compliance with the Act and the Regulations promulgated thereunder. The CFTC also seeks civil monetary penalties and remedial ancillary relief from Defendants, including but not limited to, restitution to defrauded customers, disgorgement, pre- and post-judgment interest, and such other equitable relief as the Court may deem necessary.

9. The Commission also requests that the Court order Relief Defendants Giri Subramani and Loka Pavani Giri to disgorge funds they received from Defendants' illegal activities and in which they have no legitimate interest.

## II.    JURISDICTION AND VENUE

10. **Jurisdiction**.  This Court has jurisdiction over this action under 28 U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  In addition, Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), provides that U.S. district courts have jurisdiction to hear actions brought by the CFTC for injunctive and other relief or to enforce compliance with the Act whenever it shall appear to the CFTC that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

11. **Venue**.  Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because Defendant Giri resides in this District, Defendants transacted business in this District, and certain of the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District, among other places.

## III.    PARTIES

12. Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with administering and enforcing the Act, 7 U.S.C. §§ 1-26, and the Regulations promulgated thereunder, 17 C.F.R. pts. 1-190 (2021).  The CFTC maintains its principal office at Three Lafayette Centre, 1155 21st Street NW, Washington, D.C. 20581.

13. Defendant **Rathnakishore Giri,** is an individual who resides in New Albany, Ohio.  Defendant Giri is a controlling person of both NBD Eidetic and SR Private Equity.  Defendant Giri has never been registered with the Commission in any capacity.

14. Defendant **NBD Eidetic Capital LLC** is an Ohio limited liability company formed on October 23, 2020, with its principal place of business in Franklin County, Ohio.  Defendant Giri is the Manager and Founder of NBD Eidetic.  Defendant NBD Eidetic has never been registered with the Commission in any capacity.

15. Defendant **SR Private Equity LLC** is an Ohio limited liability company formed on April 6, 2021, with its principal place of business in Franklin County, Ohio.  Defendant Giri is the CEO and Co-Founder of SR Private Equity.  Defendant SR Private Equity has never been registered with the Commission in any capacity.

16. Relief Defendant **Giri Subramani** is an individual who also resides in New Albany, Ohio.  Upon information and belief, Giri Subramani is the father of Rathnakishore Giri.  Relief Defendant Giri Subramani has never been registered with the Commission in any capacity.

17. Relief Defendant **Loka Pavani Giri** is an individual who also resides in New Albany, Ohio.  Upon information and belief, Loka Pavani Giri is the mother of Rathnakishore Giri.  Relief Defendant Loka Pavani Giri has never been registered with the Commission in any capacity.

### IV. FACTUAL ALLEGATIONS

*Background*

18. During the Relevant Period, Defendant Giri, acting on his own, and through his companies, NBD Eidetic and SR Private Equity, engaged in a fraudulent scheme in which the

Defendants solicited over $12,000,000 and at least 10 bitcoin from more than 150 customers, for the purpose of entering into contracts of sale of digital assets in interstate commerce. Most customers were solicited to invest in purported digital asset investment funds claimed to be operated by the Defendants.

19. On or around March 2019, Defendant Giri began telling prospective customers that he was skilled at trading digital assets and offered to trade digital assets, almost exclusively bitcoin, on their behalf.

20. As a result of these solicitations, customers transferred investment funds to Defendant Giri directly, for the purpose of having Defendant Giri trade digital assets on their behalf.

21. Instead of investing all of the customer funds in digital assets, Defendant Giri only transferred a portion of the funds to digital asset trading accounts. These digital asset trading accounts are personal digital asset trading accounts held by, and for the benefit of, Defendant Giri and/or the Relief Defendants.

22. From at least March 2020 through June 2021, Defendant Giri intentionally gave the appearance of being an extremely successful trader to current and prospective customers by driving luxury automobiles and wearing expensive personal accessories. For example, Defendant Giri informed current and prospective customers that he used profits from his digital asset trading to purchase several luxury automobiles, including Lamborghinis and an Audi R8.

23. Moreover, in or around October 2020, Defendant Giri told numerous current and prospective customers that he was purchasing a Lamborghini and adding it to his car collection. Also, in or around June 2021, numerous prospective customers saw Giri wearing a watch worth hundreds of thousands of dollars and were told that he owned multiple luxury automobiles.

*NBD Eidetic*

24. Beginning in or around October 2020, Defendant Giri created NBD Eidetic for the purported purpose of forming various digital asset investment funds.

25. Defendant Giri is listed as a "Manager or Designated Member" of NBD Eidetic on NBD Eidetic's formation documents. Defendant Giri signed agreements on behalf of NBD Eidetic as the "Founder" of NBD Eidetic. Defendant Giri is an authorized signatory on the NBD Eidetic bank accounts.

26. In or around January 2021, Defendant Giri and NBD Eidetic solicited and received approximately $1,800,000 from 29 customers for the purported purpose of trading in digital asset funds operated by the Defendants.

27. After the funds were transferred to NBD Eidetic, Defendant Giri and NBD Eidetic pooled the customer funds and commingled them with Defendant Giri's personal bank account, Defendant Giri's personal digital asset trading account, as well as the Relief Defendants' personal bank and digital asset trading accounts.

28. Instead of investing all of the customer funds in digital assets, Defendants only transferred a portion of the funds to digital asset trading accounts. These digital asset trading accounts are personal digital asset trading accounts held by, and for the benefit of, Defendant Giri and the Relief Defendants.

29. Throughout the Relevant Period, Defendant Giri acted as an agent and controlling person of NBD Eidetic. In this capacity, Defendant Giri ran the day-to-day operations of NBD Eidetic, including but not limited to, controlling NBD Eidetic's bank accounts, entering into agreements with customers on its behalf, and being primarily responsible for the solicitation of customers and other communications on its behalf.

### *SR Private Equity*

30. Beginning in or around April 2021, Defendant Giri launched SR Private Equity for the purported purpose of setting up various digital asset investment funds.

31. Defendant Giri is the CEO, manager, designated member, and head trader of SR Private Equity. Defendant Giri is an authorized signatory on the SR Private Equity bank accounts.

32. From at least April 2021 until the present, Defendant Giri and SR Private Equity solicited and received approximately $4,840,500 from at least 40 customers.

33. After customers transferred their funds to SR Private Equity's bank account, Defendant Giri and SR Private Equity pooled the customers' funds and commingled them with Defendant Giri's personal bank account, Defendant Giri's personal digital asset trading account, as well as the Relief Defendants' personal bank and digital asset trading accounts.

34. Instead of investing all of their funds in digital assets, Defendants only transferred a portion of the customer funds to digital asset trading accounts. These digital asset trading accounts are personal digital asset trading accounts held by, and for the benefit of, Defendant Giri and the Relief Defendants.

35. Throughout the Relevant Period, Defendant Giri acted as an agent and controlling person of SR Private Equity. Defendant Giri ran the day-to-day operations of SR Private Equity, including but not limited to the opening and control of SR Private Equity's bank account, entering into agreements with customers on its behalf, and being primarily responsible for the solicitation of customers and other communications on its behalf.

*Other Customers*

36. Throughout the Relevant Period, at least 90 other customers deposited more than $5,768,000 and 10 bitcoin into the Defendants' bank accounts, and digital asset trading accounts owned or controlled by the Defendants, for the purpose of having Defendants trade digital assets on their behalf. These customers made these investments by depositing bitcoin, cashier's checks, checks, wire transfers, Venmo, PayPal, or through Zelle and other means of transferring funds.

*Misrepresentations, Omissions, and False Statements*

37. Throughout the Relevant Period, Defendants solicited prospective customers to invest with the Defendants via in person meetings and events, word of mouth, emails, texts, telephone calls and at least one networking conference. During these solicitations, the Defendants either intentionally or recklessly included false and misleading statements and omissions of facts.

38. Throughout the Relevant Period, Defendant Giri, acting individually and on behalf of NBD Eidetic and SR Private Equity, made numerous misrepresentations to existing and prospective customers including, but not limited to, the following:

- Giri was a successful digital asset trader who obtained profitable returns averaging up to 5% to 10% a month;
- Customers were guaranteed profits, sometimes as high as 10% a month;
- Customers were guaranteed that they would not lose their initial investment;
- Giri was able to minimize risk by placing stop-loss orders on his trades;
- Investing with the Defendants was a "safe" investment; and
- Customers would be able to withdraw their invested funds and profits at any time;

39. Defendants knew, or were reckless in not knowing, that these statements were false. For example, contrary to Defendants' promises, Defendants refused to allow existing customers to withdraw their initial investments and purported profits. In fact, often when customers attempted to withdraw their invested funds, Defendants stopped communicating with them or manufactured excuses regarding the Defendants' inability to return their funds. Further, Defendants falsely misrepresented the high risk of loss associated with trading digital assets and Giri's trading success because, upon information and belief, Giri's trading resulted in net losses during the Relevant Period.

### *Defendants Made Material Omissions to Customers*

40. During the Relevant Period, Defendants also intentionally or recklessly omitted material facts in communications with current and prospective customers, including that: (a) Defendants misappropriated and commingled customer funds with Defendant Giri's personal bank and digital asset trading accounts and the personal bank and digital asset trading accounts of Giri Subramani and Loka Pavani Giri ("Relief Defendants"); (b) Defendants misappropriated customer funds to pay purported profits to other customers in a manner akin to a Ponzi scheme; (c) Defendants misappropriated customers' funds to pay for Defendant Giri's lavish lifestyle, which included yacht rentals, luxury vacations and luxury shopping trips; (d) Defendant Giri only transferred a portion of customers' funds to digital asset trading accounts; (e) Defendants never established any digital asset trading account in the name of any investment fund; and (f) Defendants primarily engaged in trading of digital assets through an international digital currency trading platform that does not allow U.S. customers.

*Misappropriation of Customer Funds*

41. During the Relevant Period, Defendants intentionally or recklessly misappropriated customer funds for Giri's personal use in order to fund Giri's lavish lifestyle and to pay purported profits to existing customers, in the manner of a Ponzi scheme.

42. For example, between August 18, 2021 and October 18, 2021, Defendant Giri spent $100,000 on purchases of a private jet rental, a luxury yacht rental-including a professional chef, Gucci store purchases, a luxury vacation home, and hotel rentals. During the same period, Defendant Giri spent more than $140,000 on personal credit card payments. Some, if not all, of these payments were made by misappropriating customer funds.

43. Moreover, throughout the Relevant Period, Defendants intentionally or recklessly misappropriated customer funds by using the investment funds of newer customers to pay out purported profits to earlier customers in a manner akin to a Ponzi scheme.

44. For example, on or about May 28, 2021, one customer transferred $300,000 to SR Private Equity's bank account for the purpose of "cryptocurrency" investment. That same day, Defendants transferred those funds, along with $100,000 from Giri Subramani's personal bank account, to NBD Eidetic's Bank account. After the transfers, NBD Eidetic sent wire transfers totaling at least $398,000 to approximately thirty NBD Eidetic customers.

V. **VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS**

**COUNT I - FRAUD BY DECEPTIVE SCHEME OR CONTRIVANCE**

**Violations of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) and Regulation 180.1(a), 17 C.F.R. § 180.1(a)**

45. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

46.	7 U.S.C. § 9(1) provides, in relevant part:

> It shall be unlawful for any person, directly or indirectly, to use or employ or attempt to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate . . . .

> Further, 17 C.F.R. § 180.1 (2021) provides, in relevant part:

> (a) It shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly:

> (1) Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud;

> (2) Make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading;

> (3) Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person, . . . .

47.	Digital assets such as bitcoin are encompassed in the definition of a "commodity" under Section 1a(9) of the Act, 7 U.S.C. § 1a(9), and contracts for their sale are subject to the prohibitions of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a).

48.	During the Relevant Period, as described above, Defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) by, among other things, in connection with contracts of sale of commodities in interstate commerce, using or employing, or attempting to use or employ, a scheme or artifice to defraud, making misrepresentations and omissions of material fact to current and prospective customers, including, among other things, misrepresenting the amount of profits customers would receive in return for their investment; misrepresenting the risk of loss;

misrepresenting that customers would be able to obtain a return of their funds upon demand; failing to disclose that the Defendants were misappropriating customer funds for Defendant Giri's personal use; failing to disclose that customer funds would be commingled with other customers' funds as well as Defendant Giri's personal accounts; and failing to disclose to customers that they used customer funds to pay purported profits to other customers, in the manner of a Ponzi scheme.

49. During the Relevant Period, Defendants also violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a) by, among other things, in connection with contracts of sale of commodities in interstate commerce, misappropriating participant funds to make distributions to other participants in a manner akin to a Ponzi scheme or transferring funds to accounts controlled by the Defendants.

50. By the foregoing conduct, Defendants directly or indirectly used or employed, or attempted to use or employ, a manipulative or deceptive device or contrivance or manipulative device, scheme, or artifice to defraud customers and engaged in this conduct intentionally or recklessly.

51. By the foregoing conduct, the Defendants directly or indirectly used or employed, or attempted to use or employ, a manipulative or deceptive device or contrivance which made or attempted to make untrue or misleading statements of material facts or omitted to state material facts necessary in order to make their statements to customers not untrue or misleading, and engaged in such conduct intentionally or recklessly.

52. By the foregoing conduct, the Defendants directly or indirectly used or employed, or attempted to use or employ, a manipulative or deceptive device or contrivance or engaged or

attempted to engage in an act, practice, or course of business which operated or would operate as a fraud or deceit, and engaged in such conduct intentionally or recklessly.

53. Defendant Giri is a controlling person of NBD Eidetic and SR Private Equity and has failed to act in good faith, or has knowingly induced, directly or indirectly, NBD Eidetic and SR Private Equity's violations alleged in this Count. Accordingly, Defendant Giri is liable for each and every violation of the Act committed by NBD Eidetic and SR Private Equity, pursuant to 7 U.S.C. § 13(b).

54. The foregoing acts, omissions and failures of Defendant Giri as alleged in this Count, and of all other agents of NBD Eidetic and SR Private Equity, occurred and are occurring within the scope of their employment, office or agency with NBD Eidetic and SR Private Equity; therefore, NBD Eidetic and SR Private Equity are liable for these acts, omissions and failures pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2 (2021).

55. Each act of (1) using or employing, or attempting to use or employ, a manipulative device, scheme, or artifice to defraud; (2) making, or attempting to make, untrue or misleading statements of material fact, or omitting to state material facts necessary to make the statements not untrue or misleading; and (3) engaging, or attempting to engage, in a fraudulent or deceitful act, practice, or a course of business, including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a).

**COUNT II - DISGORGEMENT OF FUNDS FROM THE RELIEF DEFENDANTS**

56. The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

57. As described above, Defendants have defrauded customers.

14

58. Relief Defendant Giri Subramani's personal bank account has been used to receive and transfer investment funds from customers. Relief Defendant Giri Subramani's personal trading account at a digital asset trading platform has been used to receive and transfer investment funds from customers.

59. Relief Defendant Giri Subramani does not have a legitimate claim to any funds from any of these customers. Therefore, Relief Defendant Giri Subramani should be required to disgorge those funds or the value of those funds that he received from the acts or practices of Defendants that constitute violations of the Act.

60. Relief Defendant Loka Pavani Giri's personal bank account has been used to receive and transfer investment funds from customers. Relief Defendant Loka Pavani Giri's personal trading account at a digital asset exchange platform has been used to receive and transfer investment funds from customers.

61. Relief Defendant Loka Pavani Giri does not have a legitimate claim to any funds from any of these customers. Therefore, Relief Defendant Loka Pavani Giri should be required to disgorge those funds or the value of those funds that she received from the acts or practices of Defendants that constitute violations of the Act or its Regulations.

## VI.  RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers:

A. Find that Defendants violated Section 6(c)(1) of the Act, 7 U.S.C. § 9(1); and Regulation 180.1(a), 17 C.F.R. §§ 180.1(a) (2021);

B. Enter an order of permanent injunction enjoining Defendants and their affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with

them, who receive actual notice of such order by personal service or otherwise, from engaging, directly or indirectly, in conduct in violation of 7 U.S.C. § 9(1) and 17 C.F.R. §§ 180.1(a);

  C. Enter an order of permanent injunction restraining and enjoining Defendants and their affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with them, from directly or indirectly:

1) Trading on or subject to the rules of any registered entity (as that term is defined by Section 1a(40) of the Act, 7 U.S.C. § 1a(40));

2) Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2021)) or digital assets, including bitcoin, for accounts held in the name of any Defendant or for accounts in which any Defendant has a direct or indirect interest;

3) Having any commodity interests or digital assets, including bitcoin, traded on any Defendant's behalf;

4) Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests or digital assets, including bitcoin;

5) Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling of any commodity interests or digital assets, including bitcoin;

6) Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2021); and

      7)   Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2021)), agent, or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38), registered, exempted from registration, or required to be registered with the CFTC, except as provided for in 17 C.F.R. § 4.14(a)(9);

    D.   Enter an order directing Defendants and Relief Defendants, as well as any third-party transferee and/or successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly or indirectly, from acts or practices which constitute violations of the Act and Regulations as described herein, including pre-judgment and post-judgment interest;

    E.   Enter an order requiring Defendants, as well as any successors thereof, to make full restitution to every person who has sustained losses proximately caused by the violations described herein, including pre-judgment and post-judgment interest;

    F.   Enter an order directing Defendants, as well as any successors thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between, with or among Defendants and any customers whose funds were received by Defendants as a result of the acts and practices that constituted violations of the Act and Regulations, as described herein;

    G.   Enter an order directing Defendants to pay a civil monetary penalty assessed by the Court, in an amount not to exceed the penalty prescribed by 7 U.S.C. § 13a-1(d)(1), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, tit. VII, § 701, 129 Stat. 584, 599-600; *see*

Regulation 143.8, 17 C.F.R. § 143.8 (2021), for each violation of the Act and Regulations, as described herein;

      H.     Enter an order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920, 2413(a)(2); and

      I.     Enter an order providing such other and further relief as this Court may deem necessary and appropriate under the circumstances.

Dated: August 11, 2022           Respectfully Submitted,

**COMMODITY FUTURES TRADING COMMISSION**

By: *Karen Kenmotsu*
Trial Attorney
(Appearing pursuant to Local Rule 83.3(c)(3))
NY Bar No. 2599306
Commodity Futures Trading Commission
1155 21st St. N.W.
Washington, D.C. 20581
Telephone: (202) 418-5120
E-mail: kkenmotsu@cftc.gov

Luke B. Marsh
(Appearing pursuant to Local Rule 83.3(c)(3))
Chief Trial Attorney
DC Bar No. 475635
Commodity Futures Trading Commission
1155 21st St. N.W.
Washington, D.C. 20581
Telephone: (202) 418-5322
E-mail: lmarsh@cftc.gov

Paul G. Hayeck
Deputy Director
Commodity Futures Trading Commission
1155 21st St. N.W.
Washington, D.C. 20581
phayeck@cftc.gov

ATTORNEYS FOR PLAINTIFF
COMMODITY FUTURES TRADING COMMISSION